Edwin L. Dornberger, Law Firm of Sachs, Dornberger, and Vita, and with me is Kevin P. Dean of my office who is also assisting me on the brief. Welcome to California. Thank you. I've been here before. I've been in front of your compatriots at San Francisco on a few occasions, one specifically. Welcome back. Thank you. Where are you from? I was originally admitted in Honolulu, and for the last 25 years I've been practicing in Connecticut. We are here examining a summary, the granting of summary judgment in the district court on an insurance coverage action that was brought by Turner Construction Company against Zurich Insurance Company, seeking coverage for claims made against Turner Construction in a case brought by Colton Senior Housing in Southern California. The allegations basically were that there were construction defects. As a result of that, Turner had liability. There were many parties involved in the underlying case. In connection with that underlying case, it's undisputed that Zurich provided a partial defense to Turner. There is no claim for Turner for amounts that were paid in addition to the defense. However, the claim is for indemnification under the Zurich policies on which it is admitted that Turner Construction was an additional insurer. Zurich moved for summary judgment on various grounds. The court granted summary judgment on one ground, violation of the voluntary payments provision of the insurance policy. This was Zurich's policy with Western, the sub on the HVAC? That's correct. And the on which Turner was admittedly an additional insurer. The first point that we want to raise is that the district court erred when it placed the burden of proof on Turner. It was alleged as a special defense by Zurich that Turner violated the voluntary payments provision. And indeed, the policy itself on the conditions of coverage has a specific provision relating to that, which provides that no insurers will, except at their own cost, voluntarily make a payment. I'm going to omit some superfluous language, without our consent. And therefore, it was Zurich's burden to show that Turner voluntarily made a payment without consent of Zurich. This matter is heard de novo. So on appeal, the court does have the ability to correct that by providing the correct standard of review and holding Zurich to their burden of proof. And we believe that Zurich did not meet their burden of proof. The. Well, did Turner, did Turner admit that it lacked consent to settle? There was, what Turner admitted is that there was no offer made by Zurich to pay any amounts for Turner's liability in the underlying case. Well, but did Turner get, get Zurich's consent to settle? No, they did not get consent from Zurich to settle, for Turner to settle with regard to their additional insured obligation. Zurich did consent to the overall settlement, or impliedly consented, because they did pay a million dollars on behalf of Western Air, the name insured under the policy. With regard to the voluntary payments, though, we think that the district court actually set forth the correct standard imposed by the California courts under the Isaacson case. Isaacson versus California Insurance Guarantee Association. And on page 12 of the court's decision, they say. Let me back up just a second. I apologize for interrupting. I want to make sure my mind is clear on this. Did Turner enter into a settlement? Turner entered into a settlement agreement with the plaintiffs in the underlying case. Yes, they did. Did they pay money? They paid $5.5 million. And was that done with Zurich's consent? There is no document, nor can I point to anything in the record that says that Zurich consented to that directly. Zurich did agree that the settlement should be entered into on behalf of Western Air, where they paid the million dollars, which was part of an overall settlement. It was a global settlement. So for the purpose of this panel, considering this appeal, we should assume, one, that Turner did in fact settle, and two, that it was done without Zurich's consent. I would agree with the first part. Turner did settle. That is, there's no dispute as to that. But as to the consent, Zurich was aware of the settlement amount. They did pay money on behalf of Western Air. So that they knew about it. They knew that Turner was entering into that settlement. They did not specifically consent to Turner as an additional insured entering into the settlement. There was an overall consent to the settlement by Western Air, excuse me, by Zurich on behalf of Western Air. Your position is that Zurich's consent to the overall settlement eliminates the need for, this is a question, eliminates the need for specific consent to your particular settlement, your client's particular settlement? I can't state that specifically. I believe it goes to the reasonableness of the settlement. But I think that it is a, it's certainly our position that Zurich knew about the settlement and that they did not object to the settlement. Is there any question but that NVP clauses are enforceable as a general matter? There is no question that they're enforceable as a general matter. It depends on the circumstances, though, under which they are enforceable. And we think that under California law and Isaacson, the Court correctly stated the standard, which is when the Court on page 12 says, when they're saying that there's no issue of fact, Turner has adduced no evidence creating a genuine issue of material fact as to whether Zurich refused to make a reasonable settlement offer or accept the reasonable settlement demand. We think that Turner has presented sufficient evidence as to the first prong of that test. That is that Zurich refused to make a reasonable settlement offer on behalf of Turner as an additional insured. What the record shows completely is Zurich made no settlement offer on behalf of Turner. And indeed, the statements were made by Zurich that they would only pay on behalf of Western Air and not Turner. The insurance policies do have a separate, a separation of insureds provision. And in that separation of insureds provision, they have to treat each insured as separate insureds. The affidavit submitted certainly point out that Zurich did not make any settlement offer on behalf of Turner. With regard to the second prong of that test, to accept a reasonable settlement demand, again, we believe that the Court was in error in holding that. When the, it's undisputed that Turner sent a specific settlement demand to Zurich. The issue is, did Turner give Zurich sufficient time to respond? And we believe that that is an issue that goes to the jury in this particular case. As the Court found on page 16, Turner settled with Colton within a day of demanding $3.3 million in indemnification from Zurich. In fact, within a day, it means that it was the following day that the settlement was actually consummated. But again, that would go to the facts and circumstances surrounding that demand for payment of the $3.3 million. And what the record shows is that there had been mediations going on since October of the prior year. The settlement was actually reached in January of 2003. Mediation had been going on in the underlying case since October of 2002, in which Zurich had representatives. And the record, even on the portions which were not objected to, the affidavits, show that Zurich was made aware of the settlement and the amounts that were being demanded by the plaintiffs. And given that background, when it comes to the actual timing of the settlement, we believe that that is an issue of fact that needs to go to the jury. It's not to be determined on summary judgment as to whether that was reasonable time to give Zurich an opportunity to respond. I am not going to directly address all of the evidentiary rulings and striking portions of the affidavit. I believe that those are set forth realistically in the actually in our briefs. I would like to point out, though, one which concerns an evidentiary objection to Exhibit H, which was attached to the affidavit of Attorney Sachs. That was excluded on the grounds of an inadvertent production of a document conceivably subject to attorney-client privilege. We believe that the position, as espoused by the general proposition and by this Court, is that an inadvertent production of a document subject to attorney-client privilege under the circumstances where sufficient evidence has been given to show that care was taken to not produce it would render the document subject to non-use or non-evidentiary value. In this particular case ---- Kennedy. Why didn't Zurich come in and settle this claim? Excuse me? Why didn't Zurich come in and settle the claim? That's a question that we have had since 2003. And we believe that overall the issue ---- I'm three years behind the time. That's correct. But the position set forth by Zurich very specifically was we will not pay any money on behalf of Turner as an additional insurer. There's no vehicle statutory or from case law in California that would permit a judge to in effect compel Zurich to settle all but not leaving some out. There is no vehicle ---- I haven't stated that very well. But you understand what I'm saying? I understand what you're saying. And there is no either statute ---- there is no statutory way to do that. There is the case law that says that the insured has the duty to ---- excuse me, the insurer has the duty to accept a reasonable settlement. And failing that, the insured has a cause of action against the insurer for amounts paid. See, where I come from, Arizona, you couldn't do a settlement like this. You would ---- a judge would bring all of you in and said it's either all of you settle or I'm not going to approve a settlement. In the underlying case, everyone did settle, but there was nothing to compel ---- I would note that Zurich did raise as a grounds for summary judgment in the trial court, which is not on appeal right now because it wasn't acted upon, that the settlement entered into by Turner was in effect a release of Zurich's obligation to Turner. But the record clearly shows that any obligation of Zurich to Turner as an additional insured was specifically excluded from that settlement agreement. And those documents are attached to the record. I'm sorry, the flip side of the question that I just asked earlier is that as a general matter, do you concede that Zurich was within its rights to tell the plaintiffs in the underlying action that it would settle on behalf of the ---- on behalf of Western, but not on behalf of anyone else? Zurich was probably within its rights to do that with regard to the Colton claims. However, it still had the duty to pay a reasonable amount and to enter into a reasonable settlement on behalf of Turner. There are two obligations. I know that my time is coming a little bit short. I would like to use ---- that you say the general consent implies the specific consent. We talked about that earlier. Was that raised below? It was only raised below that Zurich had consented to the overall settlement. Okay. All right. I would like to reserve the few minutes remaining that I have for rebuttal. Good morning, Justices. My name is Karen Bozzini. I'm a partner with Senate Dito Moore in Puebla in Los Angeles, and I'm here representing Apelli Zurich American Insurance Company. You're probably used to appearing in front of the California Court of Appeal, where they really are justices. As any of our critics will tell you, there's no justice on this Court. We're just judges. For a judge. Okay. Thank you, Judge Hawkins. Judge Hawkins raised an issue that I would like to at least comment on, and I think it goes to the heart of the case. There's three key points here. Turner never presented a $5.5 million settlement demand to Zurich in January 2003 for Zurich to consent to. Turner conceded that today. Turner never asked for Zurich's consent to the settlement once Turner determined that $5.5 million was the settlement number. Turner's failure to seek Zurich's consent in advance of its agreement to settle at $5.5 million breached the no voluntary payments provision of the policy. Under a long line of California cases, Turner cannot prevail in its lawsuit for reimbursement of a settlement shortfall from Zurich because Turner did not satisfy the condition precedent obtaining Zurich's consent to fund the settlement. Turner construction is an additional insured on policies Zurich American issued to Western Air. By January 2003, Zurich had been defending Turner under these policies for three years. This morning, Mr. Dornberger suggested that Zurich was only providing a partial defense. That's not true. What Zurich was doing here is very common in these types of insurance cases. Zurich was defending its subcontractor, Western Air, and Zurich was paying a share along with several other insurance carriers of Turner's defense costs. I assume under a reservation of rights. Under a reservation of rights for both parties. Turner in fact suggested the cost sharing agreement and suggested the amount that Zurich paid. And Zurich paid that agreement throughout the entire litigation. There's no dispute about that. The record at 74, page 71, shows Turner's proposed cost sharing agreement to Zurich that was entered into. Turner settled Colton's construction defect lawsuit against it in January 2003 without informing its defending insurer Zurich that it had received the settlement demand from $5.5 million that it was considering. Turner settled the lawsuit without asking for Zurich's consent to the settlement and without asking Zurich to fund $3.3 million of it. It was only after Turner agreed to the $5.5 million settlement that Turner demanded that Zurich fund $3.3 million of it. Turner's actions breached the no voluntary payments provision of the Western Air policies. Can I ask a specific question here? The NVP, no voluntary payment clause, applies to payment? It applies to the provision states, no insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense except for first aid without our consent. Can that clause be violated in advance of the actual payment of settlement amounts? I'm not sure I understand your question, Judge Hawkins. You've led us up to the point saying that apparently Turner negotiated a settlement, didn't tell Zurich about it, agreed to a settlement, didn't tell Zurich about it, but what I was told was that Turner had actually made a payment pursuant to that settlement without notifying Zurich. Turner doesn't have to make a payment because Turner assumed an obligation. The answer to my earlier question is yes, you can violate it by something other than actually transferring money. Yes, Your Honor. By agreeing to the settlement and assuming obligations under it, they violated the second clause of the NVP. That's right, Your Honor. It's undisputed that Turner settled the case without seeking Zurich's consent. Turner maintains that it did not have to seek Zurich's consent because Zurich had breached obligations by refusing to agree to a reasonable settlement offer in some unspecified amount and at some unspecified earlier point in time. However, even if this Court considers all of the testimony in the Declaration of Turner's counsel, Tracey Sachs, even those paragraphs that the District Court deemed inadmissible, Turner presented no fact to support a conclusion that Zurich had refused to agree to a $5.5 million settlement, thereby excusing Turner's obligation to seek Zurich's consent to the settlement. Mr. Sachs did not testify that he asked Zurich at any time to consent to a $5.5 million settlement. Mr. Sachs did not testify that he advised Zurich that Turner had received a $5.5 million settlement demand in January 2003. Mr. Sachs did not testify that he advised Zurich in January 2003 that Turner believed that a $5.5 million settlement was appropriate. Mr. Sachs did not testify that he asked Zurich at any time to agree to fund $3.3 million toward a $5.5 million settlement. Mr. Sachs did not testify that he gave Zurich the opportunity to accept or reject a $5.5 million settlement at any time. Mr. Sachs did not testify that Turner recommended that Zurich accept the $5.5 million settlement. Turner agreed to settle the case at $5.5 million on or about January 8, 2003, and then advised Zurich of this on January 13, 2003, after Turner and Colton had sealed the deal. Were there ongoing settlement negotiations among all the parties? Your Honor, there were two mediation sessions on October 24th and November 7th, 2002, but My question was simply, did those discussions, if I take it with a mediator, involve all parties? In varying groups, yes. And at no time during those discussions was Zurich ever asked to agree to settle the case at $5.5 million or agree to fund a large portion of the settlement. What was the total settlement? The total settlement was $5.5 million. And what part of that did Zurich pay? $1 million on behalf of Western Air's liability. Okay. Consent is a condition precedent to coverage. California law is clear that an insurer like Zurich that is funding Turner's defense has the absolute right to control the defense. That right includes the right to decide whether to settle the case or whether to try it. Turner unilaterally took that right away from Zurich by settling the lawsuit without Zurich's consent. A long line of California cases has consistently honored no voluntary payment provisions. As recognized by one, the appellate court in Jamestown builders, quote, they are designed to ensure that responsible insurers that promptly accept a defense tendered by their insureds thereby gain control over the defense and settlement of the claim. That means insureds cannot unilaterally settle a claim before the establishment of the claim against them. This settlement between Turner Construction and the plaintiffs was wholly unknown to Zurich? No, it was not wholly unknown to Zurich, Your Honor. Zurich was participating in the mediations in October and November on behalf of Turner and also on behalf of Western Air. Zurich had two different adjusters at those mediation sessions. So Zurich was aware that settlement negotiations had been ongoing in October and November. Zurich was not aware that the negotiations had resumed in January of 2003. The California Supreme Court in Grabaldo observed? Just one follow-up. When Zurich did learn that Turner had apparently committed to a settlement with the plaintiffs and the underlying action, did it warn Turner about the NVP clause? The record shows that Zurich only learned about the settlement after it had been agreed to. The evening of January 13th, it was a Monday evening, Western Air's senior counsel contacted Zurich and said, you know, we have to settle the case at a million dollars. Zurich, Turner is going to settle at 5.5, with or without us. Turner has demanded a million dollars from Western Air. We recommend that we accept the million dollars. That was the first time that Zurich learned of this, and Zurich consented at Western Air's request to pay a million dollars for the damages arising out of Western Air's work at the project. And it's Zurich's position throughout that that is the indemnity, the whole of the indemnity Zurich owed to Turner was arising out of Western Air's damages at the project. At the point in time where Western, your primary insured, told your client Zurich that there was an overall settlement pending of 5.5 million and that one million was needed from your client to contribute to the settlement, was it on notice that Turner was contemplating paying the remainder to the plaintiffs? Zurich assumed that Turner was paying the remainder to the plaintiffs. Turner had its own insurer involved in the case, and Zurich assumed that its $1 million payment was its responsibility toward the 5.5 million at that point in time. At what point in time did Zurich put Turner on notice that it was in violation of the NVP clause? Within a day or two after that, when Zurich received the demand letter from Turner that said, oh, by the way, we've settled and now we want you to pay $3.3 million, Zurich's counsel told Turner you can't do that, you're in violation of the NVP clause. In fact, this litigation had already been initiated by Turner four months before. So once that occurred, counsel spoke. So Turner was definitely on notice that Zurich believed it had breached the NVP clause. The California Supreme Court in Grabaldo observed that the no voluntary payments provision was intended to, quote, invest the insurer with complete control and direction of the defense or compromise of suits or claims. This is in your brief, isn't it? That could possibly be. I don't remember if that exact quote was. But the case is certainly cited in our brief. I think we're at a point where we understand your position. And if this is already in your brief, we've read your brief. Okay. Well, Your Honor, I think there's a couple of points that are important to make. The following critical facts are undisputed. And they support the district court's grant of summary judgment in Zurich's favor. It's undisputed that Zurich was defending Turner. It's undisputed that Turner never asked the court. I'm sorry. I don't mean to interrupt you. But are these the same facts that you went through when you started your argument? Some of them are. I think one point I would like to make is that it's important for the Court to remember that Turner understood its obligation to obtain Zurich's consent to a settlement with Colton. Why else would Turner have sent the letter by overnight mail on January 13, 2003, advising Zurich of the impending settlement and demanding that Zurich participate and fund it at $3.3 million? Okay. Thank you. Your Honor, if I may just briefly respond to a couple of the points that were made. One, that Turner never presented a $5.5 million settlement demand. I think that was stated first. And then later on, it was sort of retracted. And I can certainly point the Court to the exhibits that were filed in this case, and specifically to Exhibit J, Recorded 76-1, a letter from Tracy Sachs Coverage Counsel of Turner to Deborah Puebla, the coverage counsel for Zurich, which specifically states that they're going to enter into the $5.5 million settlement, that $3.3 million is being demanded from Zurich. The second point, that Zurich informed Turner that it could not enter into this settlement because of the no voluntary payments provision. I know of no place on the record that that statement is supported. If it was indeed in a conversation between Ms. Puebla and Attorney Sachs, it's not in Attorney Sachs's affidavit and Attorney Puebla did not submit an affidavit. So I don't know where that statement comes from. The one other point that I would like to raise, one other point. Zurich was defending under a reservation of rights. The issue under that reservation of rights is whether you nevertheless have to get consent to settle. Other jurisdictions, not California, because California does not seem to have addressed that issue, but as pointed out in our briefs, other jurisdictions have addressed the issue, and when an insurer is defending under a reservation of rights, they do not have the same ability to use the voluntary payments provision. And then finally, I'd just like to distinguish, it's distinguished in our brief, but Jamestown Builders is not at all on point. Jamestown Builders was a builder paying $1.2 million in damages to repair certain defective work before he ever notified the insurance company of any type of a claim. It's not applicable to a situation where not only has the underlying claim been tendered and being defended, but also where the mediation is going on and there is a duty to accept a reasonable settlement on the point of the, from the, excuse me, a duty on the insurer to accept a reasonable settlement on behalf of its insurer. If there are no other questions, thank you very much. Thank you. Are there any matters submitted?
judges: Pregerson, Hall, Hawkins